IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SRI INTERNATIONAL, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>CISCO SYSTEMS, INC.,<br><br>    Defendant. | C. A. No. 13-1534-SLR-SRF<br><br><br><br>PUBLIC VERSION |

**PLAINTIFF SRI INTERNATIONAL, INC.'S RESPONSE IN OPPOSITION TO DEFENDANT CISCO SYSTEMS, INC.'S MOTION TO EXCLUDE THE TESTIMONY OF DR. WENKE LEE REGARDING APPORTIONMENT**

Thomas L. Halkowski (#4099)
Warren K. Mabey, Jr. (#5775)
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE 19801
Tel: (302) 652-5070
halkowski@fr.com; mabey@fr.com

OF COUNSEL:

Frank Scherkenbach
David Kuznick
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210-1878
Tel: (617) 542-5070

Howard G. Pollack
Mike Sobolev
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063
Tel: (650) 839-5070

David M. Hoffman
David S. Morris
FISH & RICHARDSON P.C.
111 Congress Avenue, Suite 810
Austin, TX 78701
Tel: (512) 472-5070

Phillip W. Goter
FISH & RICHARDSON P.C.
60 South 6th Street, Suite 3200
Minneapolis, MN 55402
Tel: (612) 335-5070

Joanna M. Fuller
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Tel: (858) 678-4380

*Attorneys for Plaintiff*

Dated: December 4, 2015

**TABLE OF CONTENTS**

I.    NATURE AND STAGE OF THE PROCEEDINGS ............................................1

II.    SUMMARY OF THE ARGUMENT ....................................................................1

III.    ARGUMENT..........................................................................................................2

    A.    The Apportionment in this Case is Largely Undisputed............................2

    B.    For the Three Disputed Categories, Dr. Lee's Methodology is Sound ........................................................................................................3

        1.    Dr. Lee Relies on an Agreed Methodology for Sourcefire Sensors ..........................................................................4

        2.    The Use of a Throughput Modifier is a Technical Issue ...............5

        3.    The Dispute over Cisco Services is Minor ...................................6

    C.    Dr. Lee is Qualified to Provide Testimony on the Proper Apportionment ............................................................................................7

    D.    Dr. Lee's Apportionment Analysis is Primarily Technical .......................8

    E.    Dr. Lee's Apportionment Methodology is Reliable ..................................9

IV.    CONCLUSION.....................................................................................................10

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Apple v. Motorola,*
  757 F.3d 1286 (Fed. Cir 2014) ............................................................................................. 8, 9

*Lucent Techs., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2012) ................................................................................................ 9

**Other Authorities**

Damballa (https://www.damballa.com/company/board-of-directors/) ............................................ 7

I.      **NATURE AND STAGE OF THE PROCCEDINGS**

This is a patent infringement case. Fact discovery closed on February 13, 2015. (D.I. 24.) Expert discovery closed October 15, 2015.[1] (*Id.*) An in-person status hearing on expert discovery was held on October 19, 2015. Trial is set for May 2, 2016. (D.I. 40.)

II.     **SUMMARY OF THE ARGUMENT**

The purpose of a Daubert motion is to seek to exclude testimony that is so unreliable it is not appropriate for jury consideration. In this case, however, Cisco improperly seeks to exclude apportionment testimony that is so reliable that █████████████████████████████ For example, Cisco argues that Dr. Lee's 50% apportionment for certain accused products is unfounded where Cisco's own expert arrived ████████████████████████████ ████████████████████████████████████ 6. In fact, Cisco's expert █████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ █████████████████

Beyond this, Cisco's assertion that Dr. Lee is unqualified to provide apportionment testimony, essentially because he lacks a Ph.D. in economics, is unfounded in the law. To the contrary, even if Dr. Lee's apportionment opinions and methodology were not largely unchallenged, Dr. Lee has the qualifications to provide his opinions, which are technically based. As such, while Cisco clearly has the right to contest and challenge Dr. Lee's methodology in deposition and at trial, there is no simply credible basis for Cisco's motion.

---

[1] The parties, by agreement, have deferred the deposition of Dr. Leonard, Cisco's damages expert. The deposition remains outstanding.

## III. ARGUMENT

### A. The Apportionment in this Case is Largely Undisputed

In a case where Cisco has filed four separate motions for summary judgment and another Daubert motion, it is the definition of waste for Cisco to be seeking to wholly strike apportionment testimony that its own expert does not dispute. In particular, Dr. Lee opined that an apportionment of 50% is appropriate for baseline model Cisco ASA products, ▮

▮

▮ the ▮ rate as Dr. Lee proposed. Ex. 1, Leonard ¶¶ 179-182. ▮

▮

▮. In other words, Dr. Lee ▮ the methodology for determining the proper apportionment for SourceFire products – use the apportionment of the corresponding Cisco product/category. ▮

▮

▮

▮

---

[2] ▮

2

███████████████████████████████████████████████
███████████

To the extent that Cisco argues that Dr. Leonard's opinion was rebuttal and that ███ ██████████████████████████████ does not indicate "agreement," Dr. Leonard's report indicates otherwise. First, as noted above, ████████████████████ ████████████████████████████████ Moreover, if Dr. Leonard had made a decision to simply ████ Dr. Lee's figures and methodology for the purposes of rebuttal, ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████

In summary, ████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████. There was clearly no legitimate basis to seek to exclude Dr. Lee's apportionment opinions as a whole. Cisco's decision to not even try to tailor its motion to exclude undisputed apportionments is telling.

**B.** ████████████████████████████ **Dr. Lee's Methodology is Sound**

████████████████████████████████████████████ Dr. Lee's testimony is sound and reliable. First, with regard to Sourcefire services, Dr. Lee employed a method ████████████ for other products. Next, with regard to non-baseline ASA's, Dr. Lee's technical competency is particularly well-suited for the primary dispute over methodology. Lastly, with regard to Cisco services, Dr. Lee's expert testimony is far more reliable than Dr.

3

Leonard's, ███████████████████████████████████

███████████████████████████████████████ versus 30%).

### 1.  Dr. Lee Relies on an Agreed Methodology for Sourcefire Sensors

Unlike Cisco Sensors, ████████████████████████████

████████████████████████████████████ Dr. Lee, on the other hand, applied the ███ 90% apportionment figure for Cisco sensors to Sourcefire sensors as well. While Cisco may disagree with this conclusion, its assertion that this methodology was defective is particularly dubious because ████████████████████████████

██████████████████████████████████.

In particular, with regard to Sourcefire managers and Sourcefire IPS Services, ██

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████. In other words, Cisco asserts that Dr. Lee's opinion on the proper apportionment for Sourcefire Sensors is not just incorrect, ***but fundamentally unreliable***, because Dr. Lee employed the exact same methodology for Sourcefire Sensors ████████

████████████████████████████████. In its motion, Cisco provides no explanation why ████████████████ was reliable for some products but not others.[3]

Moreover, Cisco's alternate proposed apportionment methodology for Sourcefire Sensors is grounded squarely in 10th grade mathematics, not specialized economics. ████████████

---

[3] The fact is that with regard to Sourcefire Sensors, Cisco devised a unique way to try and justify a lower apportionment and used it. ████████████████████████████████████

████████████████████████████

4

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████. This is simple mathematics well within the expertise of an Engineering Professor and Ph.D., such as Dr. Lee. However, Cisco did not ask Dr. Lee about it at his deposition. Clearly, the preference was to simply claim that he was not qualified rather than allow Dr. Lee to explain that (1) Dr. Leonard's simple math was well within his skill set, and (2) why he disagreed with Dr. Leonard's approach in this instance. Regardless, as noted above, the only opinion that Cisco actually seeks to strike is Dr. Lee applying the same methodology that its own expert used elsewhere, and that argument is certainly not fodder for Daubert.

    **2.    The Use of ████████████████ is a Technical Issue**

While Cisco spends its Daubert motion critiquing Dr. Lee's economic qualifications, ironically, the determination of whether to use ██████████████████████████████ is exclusively technical. In particular, ████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████

If Dr. Lee had opined on the ████████ algorithm employed by Dr. Leonard, there might have been some basis for concern regarding his economic qualifications. However, he did not. In

5

fact, the dispute over whether ▮▮▮▮▮ is necessary does not even appear to be between Dr. Leonard and Dr. Lee, as ▮▮▮▮▮

▮▮▮▮▮

▮▮▮▮▮

▮▮▮▮▮. On the contrary, Dr. Lee believes as a technical matter that the use of the invention is consistent across all of the various ASA models and thus the same agreed apportionment of 50% can be applied to **all** of the Accused ASA products. Ex. 3, Lee ¶¶ 719, 726-731.

As the foundation of the dispute on the proper apportionment for non-baseline ASA products ▮▮▮▮▮ is technical, Cisco's attack on Dr. Lee has no basis. In fact, in view of the nature of the dispute, Dr. Lee would appear to be the preferred expert to address whether or not Dr. Clark is correct technically on the need for a throughput modifier. Notably, however, Cisco did not ask Dr. Lee a single question on the "throughput modifier" during his deposition.

**3.    The Dispute over Cisco Services is Minor**

▮▮▮▮▮ compared to Dr. Lee's 30%. Cisco's figure was based on a 2▮▮▮▮▮

▮▮▮▮▮

▮▮▮▮▮.[4]  Again, ▮▮▮▮▮

▮▮▮▮▮

▮▮▮▮▮. It is ironic that Cisco seeks to exclude Dr. Lee's

---

[4] ▮▮▮▮▮
▮▮▮▮▮

opinion, detailed in his report, as being untestable in cross-examination when ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

### C. Dr. Lee is Qualified to Provide Testimony on the Proper Apportionment

Even if Dr. Lee's opinion and methodology were not as undisputed as they are, Dr. Lee would nonetheless still be qualified to provide his opinions on the proper technical apportionment. First, Cisco is simply wrong that Dr. Lee lacks knowledge or experience in the pricing and valuation of network security appliances. In fact, Dr. Lee has more experience in this area than Cisco's expert. As Dr. Lee testified, in 2006, he was one of the founders of a company known as Damballa (https://www.damballa.com/company/board-of-directors/) that provides enterprise network security (the same general field as the accused products). Dr. Lee testified that his work at Damballa specifically involved ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. 4, Lee Tr. at 40:1-46:5.

In fact, his work at Damballa involved far more. As Dr. Lee testified, as part of his responsibilities at Damballa, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

SRI does not dispute that Dr. Leonard has a Ph.D. in economics whereas Dr. Lee does not. However, a year ago, Dr. Leonard had likely never heard of enterprise level network

7

security whereas Dr. Lee had long since founded a business in the technology space, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Cisco cites to no case that requires that apportionment only be performed by Ph.D.s in economics, much less ones that have no actual real world understanding of the market or technology. Similarly, Cisco's assertion that Dr. Lee's opinion is not reliable because he was unable to recite the legal standards involved at his deposition is irrelevant. Dr. Lee is not a lawyer – he is an expert. To the extent that Cisco believes that SRI's case rests on a legal error, Cisco is not precluded from arguing that at trial and beyond. Moreover, if Dr. Lee is as unqualified as Cisco asserts, that should be easy for Cisco to establish on cross-examination – excluding his testimony now is not appropriate.

    D.    **Dr. Lee's Apportionment Analysis is Primarily Technical**

In its motion, Cisco places emphasis on Dr. Lee's occasional reference to customer value in his analysis. As noted above, Dr. Lee is uniquely qualified to make such assessments through his combination of technical and business experience. However, even if he lacked that business experience, Dr. Lee would nonetheless be qualified to provide his opinion on apportionment because, in this matter, apportionment is primarily a technical question. While Cisco asserts in its motion that "correct apportionment is an economic question which requires economic expertise," it does not cite any precedent to support the assertion that a technical expert is unqualified as a general rule from providing testimony on apportionment. In fact, the very cases cited by Cisco support the opposite conclusion. For example, in *Apple v. Motorola*, the Federal Circuit noted that "[p]atent damages calculations are often intertwined with highly technical issues precisely because damages must be based on the scope of infringement, often an involved technical question." 757 F.3d 1286, 1321 (Fed. Cir 2014). The court also explained that, like SRI's damages expert Dr. Prowse did with apportionment in this case, "[e]xperts routinely rely upon

8

other experts hired by the party they represent for expertise outside of their field." *Id.* This Court noted the same principle at the October hearing, stating that "And in terms of the value of the technology, it has to be a technical expert, does it not, to say that this device, 90 percent of its functioning reflects the patent? That does not strike me as being anything other than appropriate." Ex. 5, Proceedings Tr. at 22:23-23:2, Oct. 19, 2015.

While Cisco latches onto Dr. Lee's use of the word "value" as somehow being antithetical to technical analysis, there is simply no basis for this. The purpose of apportionment is to determine the percentage of the Accused Product that reflect the patented features and is thus the proper royalty base. *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1337 (Fed. Cir. 2012). Once that is determined as a technical matter, one may multiply the percentage by the price to attain a "value." Dr. Lee's choice to thus refer to his apportionment percentages themselves as "values" does not somehow take them out of the realm of his expertise. Further, to the extent that Cisco objects to Dr. Lee's occasional reference to customer perception of value, his technical and business qualifications make him similarly qualified to make this assessment for each of the reasons state above.

E. **Dr. Lee's Apportionment Methodology is Reliable**

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ Cisco's assertion that Dr. Lee's methodology is unreliable lacks credibility. First, Cisco does not identify any actual errors in Dr. Lee's analysis. To the contrary, Cisco focuses its motion on Dr. Lee's qualifications (addressed above), and then garnishes it with generic platitudes about Dr. Lee's opinion being "ipse dixit" or "unchallengeable" or "vague." Notably absent from these recitations is any specific analysis of Dr. Lee's actual opinions nor any assertion that Dr. Lee's methodology leads to an untenable result.

9

In his report, Dr. Lee provided over 17 pages of in-depth analysis on the proper apportionment for the Accused Products. In the case of Cisco products, Dr. Lee's analysis began with technical descriptions/diagrams of the Accused Products that were prepared by Cisco. Dr. Lee then proceeded to analyze which features of each product "can be attributed to incorporation and use of the patented features." Ex. 3, Lee ¶ 712. In most cases, Dr. Lee references numerous Cisco technical documents, Cisco-conducted customer surveys, and/or Cisco customer communications. *Id.* ¶ 718. At each step, Dr. Lee explains the basis for his opinion and the effect that the evidence has on his apportionment opinion. During his deposition, Cisco's counsel could have challenged Dr. Lee's basis or raised additional contradictory evidence (to the extent it even exists, given the large scale agreement between the experts). However, Cisco did not. It is incredible for Cisco to now claim that it is unable to challenge Dr. Lee's opinion when it purposefully made little attempt to do so in deposition.

Moreover, Cisco's assertion that Dr. Lee's opinion is not "numerical" is simply mistaken. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. Ex. 3, Lee ¶ 729. Moreover, Dr. Lee backstopped all of his opinions on apportionment with reference to the numerical survey results of Dr. Van Liere – all of which indicated that, in terms of revenue and economic value, the apportionment determinations by Dr. Lee were conservative. *See, e.g.*, Ex. 3, Lee ¶ 731. Cisco again chose to not address those opinions in Dr. Lee's deposition.

## IV.   CONCLUSION

For the foregoing reasons, SRI respectfully requests that the Court deny Cisco's motion to exclude the testimony of Dr. Wenke Lee regarding apportionment.

Dated:  December 4, 2015

FISH & RICHARDSON P.C.

By  */s/ Warren K. Mabey, Jr.*
Thomas L. Halkowski (#4099)
Warren K. Mabey, Jr. (#5775)
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE  19801
Tel:  (302) 652-5070
Fax:  (302) 652-0607
halkowski@fr.com; mabey@fr.com

Frank Scherkenbach
David Kuznick
One Marina Park Drive
Boston, MA 02210-1878
Tel:  (617) 542-5070
Fax:  (617) 542-8906
scherkenbach@fr.com; kuznick@fr.com

Howard G. Pollack
500 Arguello St., Ste. 500
Redwood City, CA 94063
Tel:  (650) 839-5070
Fax:  (650) 839-5071
pollack@fr.com

David M. Hoffman
David S. Morris
111 Congress Avenue, Suite 810
Austin, TX 78701
Tel:  (512) 472-5070
Fax:  (512) 320-8935
hoffman@fr.com; dmorris@fr.com

Phillip W. Goter
60 South 6th Street, Suite 3200
Minneapolis, MN 55402
Tel: (612) 335-5070
Fax: (612) 288-9696
goter@fr.com

**ATTORNEYS FOR PLAINTIFF**
**SRI INTERNATIONAL, INC.**

11

## **CERTIFICATE OF SERVICE**

A true and correct copy of the foregoing document was caused to be served on December 4, 2015 on the attorneys of record at the following addresses via email:

Jack B. Blumenfeld
Michael J. Flynn
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@mnat.com
mflynn@mnat.com

Adam Alper
Kirkland & Ellis LLP
555 California Street
San Francisco, CA 94104
adam.alper@kirkland.com

Steven C. Cherny
Sarah Kao-Yen Tsou
Oliver C. Bennett
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022
steven.cherny@kirkland.com
sarah.tsou@kirkland.com
oliver.bennett@kirkland.com

Jason M. Wilcox
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, DC 20005
jason.wilcox@kirkland.com

Michael De Vries
Kirkland & Ellis LLP
333 South Hope Street
Los Angeles, CA 90071
michael.devries@kirkland.com

*/s/ Warren K. Mabey, Jr.*
Warren K. Mabey, Jr.