IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SRI INTERNATIONAL, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | C.A. No. 13-1534 (SLR) (SRF) |
| v. ) | |
| ) | REDACTED - |
| ) | PUBLIC VERSION |
| CISCO SYSTEMS, INC., ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT CISCO SYSTEMS, INC.'S REPLY BRIEF
IN SUPPORT OF ITS MOTION TO EXCLUDE CERTAIN OPINIONS OF
DR. STEPHEN PROWSE REGARDING SRI'S LUMP SUM LICENSES**

OF COUNSEL:

Steven Cherny
Oliver C. Bennett
Sarah K. Tsou
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022-4611
(212) 446-4800

Michael W. De Vries P.C.
KIRKLAND & ELLIS LLP
333 Hope street
Los Angeles, CA 90071
(213) 680-8400

Adam R. Alper P.C.
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1500

Jason M. Wilcox
KIRKLAND & ELLIS LLP
655 Fifteenth Street, NW
Washington, DC 20005
(202) 879-5000

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
mflynn@mnat.com

*Attorneys for Defendant*

December 14, 2015 - Original Filing Date
December 21, 2015 - Redacted Filing Date

**TABLE OF CONTENTS**

SUMMARY OF THE ARGUMENT ........................................................................................... 1

ARGUMENT .................................................................................................................................. 2

1. SRI Has Failed To Establish The Comparability Of Its Lump Sum Settlements ....... 2

2. Cisco Has Not Sought To Strike Dr. Prowse's Entire Report And Opinion ............. 3

3. SRI's Remaining Arguments Are Irrelevant to the Question of Comparability ........ 4

CONCLUSION ............................................................................................................................... 5

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Izume Products Co. v. Koninklijke Philips Electronics N.V.*,
   315 F. Supp. 2d 589 (D. Del. 2004) ................................................................................................5

*LaserDynamics v. Quanta Computer, Inc.*,
   694 F.3d 51 (Fed. Cir. 2012) ...........................................................................................................5

*Lucent Techs., Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009) ................................................................................................1, 3

*PharmaStem Therapeutics, Inc. v. Viacell, Inc.*,
   2003 WL 22387038 (D. Del. 2003) ................................................................................................4

*Whitserve LLC v. Computer Packages, Inc.*,
   694 F.3d 10, 30 (Fed. Cir. 2012) ....................................................................................................2

*Wordtech Systems, Inc. v. Integrated Network Solutions, Inc.*,
   609 F.3d 1308 (Fed. Cir. 2010) ......................................................................................................2

**Rules**

Federal Rule of Evidence 408 ..............................................................................................................4

**SUMMARY OF THE ARGUMENT**

For multi-component products like those at-issue here, a 7.5% running royalty is extremely high and, when applied to the royalty base claimed by SRI, would result in a damages award orders of magnitude greater than any license or settlement previously obtained by SRI. Before presenting expert opinion urging the jury to award damages based on such a royalty, SRI was required to provide at least *some* analysis showing that the seven lump sum settlement agreements it is relying on translate to the requested 7.5% running royalty. It is well-settled that "significant differences exist between a running royalty license and a lump sum license," *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1326 (Fed. Cir. 2009), and thus the burden is on SRI to demonstrate the comparability of its lump sum settlements. Yet, despite this, SRI's opposition makes *no attempt* to do so. SRI's silence on this critical issue is telling, and it would highly prejudicial to allow SRI to present "expert" evidence to the jury that those agreements are evidence of a 7.5% running royalty rate without such analysis.

SRI attempts to immunize this failure by improperly characterizing Cisco's motion as one to strike Dr. Prowse's opinion in its entirety. In fact, Cisco's motion is limited to only one aspect of Dr. Prowse's analysis—his claim that SRI's lump sum settlements support his running royalty opinion. If Cisco's motion is granted, as it should be, Dr. Prowse remains free to express the opinion that a 7.5% running royalty is appropriate and supported by other evidence besides the seven lump sum settlements. SRI also devotes a substantial portion of its brief to arguing that it should be entitled to present Dr. Prowse's opinion to the jury simply because Dr. Prowse will be subject to cross-examination. The *Daubert* process and the Court's critical gatekeeping role, particularly in connection with damages opinions at odds with the law, cannot be so easily disregarded. SRI bore the burden of establishing its expert's opinion was admissible; having failed to do so, SRI should not be entitled to present this flawed evidence to the jury.

**ARGUMENT**

1. **SRI Has Failed To Establish The Comparability Of Its Lump Sum Settlements**

SRI does not dispute that lump sum settlement agreements *cannot* support a running royalty award absent specific evidence explaining how the lump sum amounts are comparable to that running royalty. *See Whitserve LLC v. Computer Packages, Inc.*, 694 F.3d 10, 30 (Fed. Cir. 2012). Yet, despite this, SRI's opposition makes no attempt to demonstrate how a single one of its lump sum settlements quantitatively relate to Dr. Prowse's proposed 7.5% running royalty. Indeed, SRI fails to explain how any of these agreements can be translated into a 7.5% running royalty based on factors such as the revenue at-issue, the apportionment factors applied, or any litigation risk adjustments made. For example, although SRI complains about Cisco's discussion of the ▇▇▇▇ settlement, (D.I. 244 at 8-9), it makes no attempt to explain how this agreement translates to a 7.5% running royalty, or how such information could ever be extrapolated given SRI's representations that "*there is no visibility into why Judge Ware chose [the lump sum number]. Who knows?*" (Ex. 15, 10/19/15 Hrg. Tr. at 9:12-20) (emphasis added). Further, SRI fails to demonstrate how the revenue, apportionment, and/or litigation risk adjustments in the lump sum ▇▇ and ▇▇▇ agreements can be translated into a 7.5% running royalty, even though these agreements expressly state on their face that they were the product of such factors. (D.I. 214 at 4).

Critically, knowing how each of these underlying factors interrelate and impact the final lump sum amount is essential to evaluating the licenses' comparability. *See, e.g., Wordtech Sys., Inc. v. Integrated Network Solutions, Inc.*, 609 F.3d 1308, 1320 (Fed. Cir. 2010) (reliance on lump sum licenses improper where "[n]either license describes how the parties calculated each lump sum" and "without additional data, the licenses offered the jury little more than a recitation of royalty numbers.") (internal quotations omitted). Indeed, parties frequently negotiate to artificially inflate the royalty rate by deeply discounting the remaining factors—which is precisely what occurred in this case, as

evidenced by SRI's communications with one of its licensees ███████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

Tellingly, although it has the "burden to prove that [prior] licenses [are] sufficiently comparable to support the [requested] damages award," *Lucent Techs., Inc.,* 580 F.3d at 1329, SRI devotes just a single page to discussing these agreements. (D.I. 244 at 4-5). None of the evidence that SRI cites to, however, is relevant to establishing that the lump sum settlements are comparable. For example, each "document" cited by SRI is merely a publicly available website or SEC filing that simply provides background on the licensee and their product offerings, and says nothing about a 7.5% running royalty. (*Id.* at 4). Similarly, the testimony of Mr. Abramson merely establishes that SRI invariably "starts" at 7.5% in negotiations. (*Id.*). But that is irrelevant, unless the agreements *ended* at a 7.5% running royalty also. Moreover, as discussed above, SRI provides no evidence as to *how* the final lump sum number was arrived at and, in particular, how the revenue, apportionment, and litigation-risk adjustments were used to reach this number.[1] Without such evidence, SRI cannot meet its burden of establishing the comparability of its lump sum settlements, rendering Dr. Prowse's opinion on these agreements inadmissible.

### 2. Cisco Has Not Sought To Strike Dr. Prowse's Entire Report And Opinion

Rather than responding to the merits of Cisco's arguments, SRI's wrongly alleges that Cisco has effectively moved to strike the entirety of Dr. Prowse's report. (D.I. 244 at 5-6). To the contrary, this motion presents only a single, discrete issue for the Court—Dr. Prowse's improper reliance on seven non-comparable lump sum settlement agreements as support for a running royalty. Dr. Prowse's analysis of these lump sum agreements represents only a portion of his overall report.

---

[1] While SRI wants to affirmatively rely on Mr. Abramson's testimony that SRI "invariably" *starts* negotiations at a 7.5% royalty rate, Mr. Abramson either could not or would not testify to how these various factors interacted to arrive at the final lump sum number. (D.I. 214 at fn 3).

3

Indeed, Dr. Prowse devotes over thirty pages to analyzing the fourteen other *Georgia-Pacific* factors in support of his ultimate conclusion. (D.I. 245, Ex. 4, Prowse Rep. at 46-78). While those remaining parts of Dr. Prowse's analysis are deeply flawed, they are not the subject of Cisco's motion.

### 3. SRI's Remaining Arguments Are Irrelevant to the Question of Comparability

The remainder of SRI's arguments do not justify the fundamental flaws in Dr. Prowse's analysis. *First*, SRI's request for Cisco to withdraw reliance on negotiation documents has no bearing on the issues raised by the present motion, namely, Dr. Prowse's improper use of lump sum settlements to support a 7.5% running royalty. Moreover, as confirmed by *PharmaStem*, if SRI intends to affirmatively rely on these settlement agreements, fairness dictates either that Cisco be able to challenge their comparability by reference to the underlying negotiations, or both the agreements and the underlying negotiations should be excluded. (D.I. 214 at 8). SRI does not dispute this, but instead attempts to distinguish *PharmaStem* by arguing that its lump sum settlements do not explicitly state "Rule 408" on their face. (D.I. 244 at 6) But it is undisputed that the agreements at-issue here are settlement agreements, regardless of whether they bear a "Rule 408" designation. Additionally, that was not the holding of *PharmaStem*, which expressly noted that "[a] dispute under Rule 408 includes both litigation and less formal states of a dispute." *PharmaStem Therapeutics, Inc. v. Viacell, Inc.*, No. 02-148, 2003 WL 22387038 at *3 (D. Del. 2003). Here, five of the seven licenses were indisputably executed to settle pending litigation and reference this fact on their face. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ SRI's remaining attempt to argue that its licenses with ▓▓ and ▓▓▓▓ were not settlement agreements is unsupported by the evidence, as correspondence between these parties explicitly referenced settlement and are even branded with Fed. R. Ev. 408. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

*Second*, SRI's argument that Cisco could have sought discovery from SRI's various licensees

improperly attempts to shift the burden of proof on this issue. It is SRI's expert, not Cisco's, who seeks to support his opinion with the lump sum licenses at-issue. It was thus SRI's burden to establish the comparability of these licenses with evidence. Whether Cisco should have to burden third parties with this discovery, as opposed to SRI itself producing this evidence itself, is irrelevant. SRI cannot entirely omit an analysis of how the lump sum agreements translate to a running royalty (by evaluating the revenues, apportionment, litigation risk adjustments, etc.), while simultaneously criticizing Cisco for not obtaining the evidence permitting such an analysis to be made.

*Finally*, SRI argues that because Dr. Prowse and Mr. Abramson will be present for cross-examination, Dr. Prowse's opinions should be presented to the jury. (D.I. 244 at 5). This argument turns the *Daubert* process on its head, as it is the Court's role as "gatekeeper" to ensure than any expert testimony offered is reliable *before* it is presented to the jury. *Izume Products Co. v. Koninklijke Philips Elec. N.V.*, 315 F. Supp. 2d 589, 601 (D. Del. 2004) (excluding expert opinion because the court "acts as a gatekeeper [to] prevent[] opinion testimony that does not meet the requirements [for admissibility] from reaching the jury."). Cisco will be greatly prejudiced if Dr. Prowse is permitted to suggest that the seven lump sum agreements at-issue here confirm a 7.5% royalty rate. Moreover, this is not the "classic battle of the experts," as SRI alleges, but rather a situation in which the evidence needed to establish the legal requirement of comparability simply does not exist. Having failed to meet its burden, the law is clear that these agreements "simply [have] no place in this case." *LaserDynamics v. Quanta Computer, Inc.*, 694 F.3d 51, 80 (Fed. Cir. 2012).[2]

## CONCLUSION

For the foregoing reasons, and those in Cisco's opening brief (D.I. 214), Cisco respectfully requests that the Court exclude Dr. Prowse's improper reliance on SRI's seven lump sum licenses.

---

[2] This also disposes of SRI's flawed attempt to distinguish *Whitserve*. Simply because Cisco may make a motion for JMOL does not justify allowing Dr. Prowse to offer unsupported and unreliable opinions to the jury, considering the prejudicial effect that would have on Cisco.

5

OF COUNSEL:

Steven Cherny
Oliver C. Bennett
Sarah K. Tsou
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022-4611
(212) 446-4800

Michael W. De Vries P.C.
KIRKLAND & ELLIS LLP
333 Hope street
Los Angeles, CA  90071
(213) 680-8400

Adam R. Alper P.C.
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA  94104
(415) 439-1500

Jason M. Wilcox
KIRKLAND & ELLIS LLP
655 Fifteenth Street, NW
Washington, DC 20005
(202) 879-5000

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*                    
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
mflynn@mnat.com

*Attorneys for Defendant*

6